UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 05-240-DLB

ELLIS PRIDEMORE                                                                          PLAINTIFF


vs.                          **MEMORANDUM OPINION & ORDER**


JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                                               DEFENDANT

******************

    Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

    Plaintiff Ellis K. Pridemore filed an application for a period of disability and disability insurance benefits (DIB) on July 11, 2003.  His application was denied initially and upon reconsideration.  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on November 9, 2004 in Hazard, Kentucky.  On March 9, 2005, ALJ Peter Davenport issued an unfavorable decision, finding that Plaintiff was not under a disability. The Appeals Council denied Plaintiff's request for further review by letter dated July 13, 2005.  The ALJ's decision, therefore, stands as the final decision of the Commissioner on Plaintiff's claim.

1

Plaintiff, who was 50 years old at the time of the hearing, has a high school education and alleges an inability to work beginning on April 29, 1999, due to lower back pain, high blood pressure, kidney disease, severe allergies, and depression. At the hearing before the ALJ, Plaintiff indicated that he was employed as a mechanic for approximately 25 years before he injured his back in a work-related accident.

Having exhausted his administrative remedies, Plaintiff filed the instant action on August 3, 2005. The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II.  DISCUSSION

### A.   Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal

a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 15). At Steps 2 and 3, the ALJ found that Plaintiff's degenerative disc disease (DDD), degenerative joint disease (DJD), and adjustment disorder constitute severe impairments, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 15-16). At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform medium level work. (Tr. 17). Specifically, the ALJ found that Plaintiff can: lift/carry 50 pounds occasionally, 25 pounds frequently; stand/walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; occasionally stoop, crouch, and crawl; and never climb ladders/ropes/scaffolds. (Tr. 17). Mentally, the ALJ found that Plaintiff has poor abilities to deal with work stresses and to understand, remember, and carry out complex job instructions; fair abilities to relate to co-workers, deal with the public, use judgment, interact with supervisors, function independently, maintain attention/concentration, understand, remember, and carry out detailed but not complex job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability; and good abilities to follow work

rules, understand, remember, and carry out simple job instructions, and maintain his personal appearance. (Tr. 17).

Based on those findings, the ALJ concluded that Plaintiff is unable to perform his past relevant work as an auto mechanic. (Tr. 18). At Step 5, however, the ALJ found that Plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the national economy. (Tr. 19-20). This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.   Analysis**

Plaintiff has raised several alleged errors on appeal. First, Plaintiff alleges that the ALJ erred in failing to give controlling weight to the opinion of Dr. Naveed Ahmed, his treating neurologist. Similarly, Plaintiff alleges that the ALJ erred in rejecting the opinion of consultative psychiatric evaluator, Dr. Stephen Lamb, in favor of a medical expert who testified at the hearing. As a result, Plaintiff alleges that, insofar as it is based upon the opinions of non-examining state agency physicians, the ALJ's findings at Step 4 do not constitute substantial evidence upon which his decision may be based.[1] In other words,

---

[1]Plaintiff also raises ancillary arguments regarding the ALJ's RFC assessment. For example, Plaintiff claims that the ALJ's decision does not comply with Social Security Ruling 96-8p, 1996 WL 374184 at *7, which states, in pertinent part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the

Plaintiff argues that the limitations imposed by Dr. Ahmed and Dr. Lamb, when considered in combination, mandate a finding of disability.

In response, the Commissioner argues that the opinions of state agency reviewers can, indeed, constitute substantial evidence, as can the opinion of a medical expert. Moreover, the Commissioner argues that the ALJ followed the proper regulatory framework, cited to specific evidence in the record, and made all the appropriate findings. According to the Commissioner, the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons that follow, however, the Court concludes that remand is necessary.

As alluded to above, Plaintiff injured his back in a work-related accident in April 1999. He originally consulted his primary care physician, Dr. M. Sharma, who referred him to Dr. Naveed Ahmed, a neurologist, in early 2000. (Tr. 182).[2] Plaintiff initially presented to Dr. Ahmed with progressively increasing lower back pain that radiated to his lower left extremity. After several unsuccessful attempts, he underwent an MRI on June 5, 2000 that revealed early degenerative disc disease at the L4-L5 level, and bulging of the annulus at the L4-L5 and L3-L4 levels with possible neural foramina encroachment. (Tr. 163). Following the MRI, Plaintiff's radicular symptoms resolved and his back pain improved. (Tr.

---

case record were considered and resolved.

*Id*. Upon review of the ALJ's decision, the Court finds that he clearly outlined the medical evidence relied upon in formulating Plaintiff's RFC. (Tr. 16-18). Plaintiff also faults the ALJ for failing to ask the VE whether her responses were consistent with the information in the *Dictionary of Occupational Titles*. Upon remand, this issue, too, must be resolved.

[2]According to the administrative record, Plaintiff continued to seek treatment from Dr. Ahmed until August 2004. Evidence submitted to the Appeals Council, however, reveals that Plaintiff saw Dr. Ahmed after the hearing in this matter, on March 16, 2005. (Tr. 296). Generally, Plaintiff saw Dr. Ahmed in twelve week intervals.

5

155-162). On March 27, 2001, Plaintiff described his pain as "intermittent" with "occasional tingling and numbness in both lower extremities" caused by prolonged standing. (Tr. 153). He also reported that the medications Dr. Ahmed prescribed were working. (*Id.*).

During subsequent visits, Plaintiff continued to complain of a dull, aching pain and intermittent radiation into his lower extremities. For the most part, however, his symptoms remained unchanged. (Tr. 143-47).[3] On January 15, 2003, Dr. Ahmed noted that:

> [Plaintiff] has had intermittent worsening of the pain with change in the weather and apparently he knows and has learned what to do and what not to do in terms of his activities of daily living which could exacerbate his pain. Further, he has had occasional weakness in both lower extremities with a giving-way sensation and tingling and numbness. The patient has had more pronounced pain in the left lower extremity when compared to the right with tingling and burning sensation which is intermittently worse as well; however, taking the medications seems to have helped him.

(Tr. 129). These findings were reiterated during Plaintiff's May 17, 2003 visit. (Tr. 141). On December 6, Dr. Ahmed completed a physical RFC form, in which he restricted Plaintiff to: lifting/carrying less than 30 pounds; standing/walking 3-4 hours in an 8-hour workday, 1-2 hours without interruption; sitting 4-6 hours in an 8-hour workday, 2 hours without interruption; occasionally balancing; and never climbing, stooping, kneeling, crouching, or crawling. (Tr. 273-75). Dr. Ahmed also opined that Plaintiff should avoid moving machinery, fumes, and humidity. (*Id.*).

Plaintiff followed-up with Dr. Ahmed on February 18, May 19, and August 18, 2004. The pain in his lower back, which he described as dull, aching, and constant, persisted. (Tr. 282). Plaintiff also complained that the pain radiated into his lower extremities, where he felt tingling, numbness, and weakness. (*Id.*). Finally, he reiterated that any kind of

---

[3]Plaintiff did, however, report increasing pain after prolonged exertion. (Tr. 143, 149).

6

prolonged activity (i.e., sitting, standing, bending, or stooping) exacerbated his pain. (Tr. 276-82).

Plaintiff argues that the ALJ erred in rejecting Dr. Ahmed's RFC assessment. In support, he notes that Dr. Ahmed specializes in neurology and his opinions are supported by medically acceptable clinical and laboratory diagnostic techniques (i.e., an MRI of his spine). Moreover, Plaintiff alleges that the ALJ failed to point to any inconsistent or contradictory evidence. Instead, Plaintiff contends that the ALJ adopted the opinions of two non-examining state agency physicians.

At Step 4 of the sequential evaluation, the ALJ noted that Dr. Ahmed had followed Plaintiff for low back pain, with radicular symptoms, and treated him with medical therapy. (Tr. 16). The ALJ also noted that Dr. Ahmed supplied a medical source statement identifying a residual functional capacity for Plaintiff consistent with a limited range of sedentary to light work. (Tr. 17). The ALJ rejected this opinion, stating:

> The undersigned will note here that he has considered Dr. Ahmed's opinion that the claimant is able, in effect, to perform a restricted range of sedentary to light work. In this case, the undersigned finds that Dr. Ahmed's opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the record, including the range of activities of daily living in which the claimant is able to engage. His opinion is not fully accepted.

(Tr. 18).

Generally, the opinions of treating physicians are given substantial, if not controlling, deference in social security disability proceedings. 20 C.F.R. § 404.1527(d)(2); *Warner v. Commissioner of Social Sec.*, 375 F.3d 387 (6th Cir. 2004). An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the

other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion. *Id.* The regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." *Id.* A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).

In this case, it is undisputed that the ALJ used the "magic words" of 20 C.F.R. § 404.1527(d)(2). The Sixth Circuit has held, however, that conclusory statements that an opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in the case record," are not enough. *Sharp v. Barnhart*, 152 Fed.Appx. 503, 510-11 (6th Cir. 2005) (unpublished decision). This is especially true where, as here, the physician treated the claimant for a significant period of time, made specific diagnoses that were confirmed by testing, and was a specialist in his respective field. Furthermore, the state agency physicians in this case, whose opinions were ultimately adopted by the ALJ, found Plaintiff's complaints to Dr.

8

Ahmed credible. (Tr. 223, 271). While the ALJ complied with the facial requirements of the regulations, his failure to elaborate on the alleged deficiencies in Dr. Ahmed's assessment does not satisfy the purposes behind the regulatory "reason-giving" requirement. For these reasons, remand is required.

Plaintiff also argues that the ALJ erred in crediting the opinion of a medical expert who testified at the hearing over that of a consultative psychiatric examiner. Psychiatrist Stephen Lamb examined Plaintiff on August 30, 2003. (Tr. 228). He performed a clinical interview, mental status examination, and reviewed Plaintiff's records, resulting in a diagnosis of adjustment disorder with depressed mood. (Tr. 229). Dr. Lamb also opined:

> He is able to understand simple instructions and has no difficulty in recalling that information. *He is able to concentrate well but due to physical problems is unlikely to be able to complete tasks in a normal amount of time*. He is not gregarious and may have trouble with social contexts. He is unlikely to be able to cope well with pressures and stressors such as those found in typical work settings.

(Tr. 229) (emphasis added).

At the hearing held on November 9, 2004, Dr. Dixie Moore testified as a medical expert. Dr. Moore concurred with the diagnosis of adjustment disorder with depressed mood, and further opined that Plaintiff experiences mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, and mild to moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 318). These findings were consistent with the state agency reviewers. (Tr. 241, 258). Dr. Moore agreed with the majority of Dr. Lamb's assessment, but expressed some disagreement with his finding that Plaintiff is unlikely to be able to complete tasks in a normal amount of time. According to Dr. Moore, this finding was based primarily on Plaintiff's physical conditions, therefore, she rated him

9

higher on his ability to maintain concentration, persistence, and pace. (Tr. 321). The ALJ agreed with Dr. Moore's assessment, finding her "segregation of the mental limitations present in this case ... persuasive ...." (Tr. 17).

Plaintiff argues that the ALJ erred in rejecting Dr. Lamb's opinion. In support, he notes that Dr. Lamb specializes in psychiatry, and alleges that his opinion is not contradicted by any other examining source of record. According to Plaintiff, "[h]ad the ALJ accorded proper weight to the opinion of Dr. Lamb, a finding of disability would have been reached" because, assuming an inability to complete tasks in a normal amount of time, the VE testified that no other jobs would be available.

Upon review of the hearing transcript, as well as the ALJ's written decision, the Court concludes that the ALJ properly evaluated all the medical evidence and resolved any inconsistencies. Contrary to Plaintiff's assertion, the opinion of a one-time consultative examiner is not entitled to the same degree of deference as a treating physician. This argument is, therefore, without merit.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found not to be supported by substantial evidence and is hereby **REVERSED,** with this action **REMANDED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #7) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #5) is hereby **GRANTED.**

A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

Dated this 2nd day of March, 2006.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-240-PridemoreMOO.wpd